WILHELM v SCHAFER

Docket Nos. 59747, 59748. Decided August 30, 1978. On application by plaintiff for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the decision of the Court of Appeals and remanded to the trial court for further proceedings.

Ronald D. Wilhelm brought an action alleging breach of contract, fraud, and conspiracy against James B. Schafer, Marilyn Schafer, and Dart Heating and Air Conditioning Service, Inc., arising out of agreements to transfer part of defendant Schafer's controlling interest in the corporation to the plaintiff, who was an employee of the corporation, and that the corporation would buy up the rest of Schafer's shares. The Macomb Circuit Court, Edward J. Gallagher, J., found an implied condition in the stock purchase agreement that the corporation, under the plaintiff's direction, earn enough profits to make the sale feasible, and that the corporation had acted properly in failing to perform the stock purchase agreement because the corporation, after the plaintiff had taken over as president, had not produced sufficient earnings to purchase the stock, and granted judgment for the defendants at the close of the plaintiff's proofs. The Court of Appeals, Bronson, P.J., and Bashara and Horn, JJ., affirmed in an unpublished per curiam opinion (Docket Nos. 25652, 25653). Plaintiff applies for leave to appeal. *Held:*

The record reveals no basis for finding an implied agreement with the defendants that the plaintiff would cause the corporation to earn any particular amount. There was *uncontradicted* testimony that the corporation's heating and air conditioning business is cyclical, and that the profit and loss of the corporation while the plaintiff was operating the business were not different than in any other year. There is no evidence that the sale agreement contemplated redemption of all of the controlling shares at one time. The corporation's financial statement showed retained earnings of $13,040 before the agreement was made and the stock redemption obligation was $120,000. Manifestly, it was not intended by the parties that the obligation be paid out of those retained earnings. The agreement provided

for payments of $1,670 plus interest each month and delivery of the stock as it was paid for. There is no evidence that the plaintiff was in default in performing the sale agreement. Furthermore, if defendant Schafer had performed his promise to facilitate the transaction, the redemption could have gone forward without an impairment of capital. Plaintiff may be entitled to some remedy, either rescission of the agreements, damages, or specific performance.

The decision of the Court of Appeals is reversed and the case is remanded for further proceedings.

*LaBarge, Zatkoff & Dinning, P.C.* (by *Ronald H. Greve*), for plaintiff.

*Lewis Daniels* and *George Steeh* for defendants.

PER CURIAM. The lower courts found an implied condition in a stock redemption agreement that the corporation, under plaintiff's direction, earn enough profits to make the sale feasible. Our review reveals inadequate record support for the existence of the implied condition.

I

Plaintiff Ronald D. Wilhelm began working for defendant Dart Heating and Air Conditioning Service, Inc. (Dart), as a sales engineer in 1967. In November, 1971, defendant James B. and Marilyn Schafer owned all of the outstanding shares of common stock in Dart. Mr. Schafer held 1,369 shares and Mrs. Schafer, Dart's bookkeeper, held the remaining 381 shares as trustee for the Schafer's minor child.

For personal reasons, James Schafer desired to liquidate his investment and made representations to plaintiff that he would like to sell the business to one of his employees. Beginning in mid-1971, there was a series of informal discussions between

plaintiff and James Schafer that culminated in three agreements dated November 15, 1971.

The first two agreements provided for the sale by James Schafer of 300 shares and by Marilyn Schafer of 381 shares to plaintiff for a total cost of $86,132. Plaintiff paid $12,500 on November 15 and the balance was payable on January 5, 1972.

The third agreement of November 15, 1972, provided that Mr. Schafer's remaining 1,069 shares be repurchased by the corporation at the rate of $114 per share in monthly installments of $1,670 plus interest. As the result of the share purchases by plaintiff and Dart, plaintiff would eventually control the total number of non-treasury shares and would, therefore, be in control of the company. The agreement also provided that Mr. Schafer not compete with Dart, that he immediately resign as Dart's president, and that he vote his shares so that plaintiff could become president. A further provision read:

"It is further promised and agreed that James B. Schafer shall work with Ronald D. Wilhelm from the date of this agreement, and shall do all things necessary, desirable, or convenient, to facilitate the transition contemplated by this agreement."

Plaintiff failed to tender to the Schafers the balance outstanding for the purchase of the 681 shares of stock by January 5, 1972. However, the parties met on January 13, 1972 and plaintiff retired the $40,424 balance outstanding on the 381 shares of stock purchased from Marilyn Schafer, paid $6,208 to James Schafer, and executed a promissory note for the $27,000 balance still outstanding on the purchase of the 300 shares from Mr. Schafer. On the same date, plaintiff was

elected president of the company at a shareholders' meeting.

## II

This action arises from problems that developed with the redemption agreement. In May of 1972, Dart's board of directors held a special meeting and Mr. Schafer announced that there would be no redemption. In June, plaintiff requested a refund of the approximately $59,000 that he had paid. He received no refund and made a payment on the promissory note on July 15 so as to avoid default prior to the expiration of the period beginning July 5 and ending July 27 during which a redemption was to occur.

The redemption did not occur and, in August of 1972, plaintiff commenced this action against the Schafers and Dart alleging breach of contract, fraud, and conspiracy by defendant. The complaint sought rescission, specific performance and money damages. At the close of the plaintiff's proofs in this bench trial, defendants moved for dismissal pursuant to GCR 1963, 504.2. The trial court granted dismissal, finding that the defendant corporation had acted properly in failing to go through with the stock repurchase agreement because the company, after plaintiff had taken over as president, had not produced earnings which would have permitted the stock purchase.[1] The Court of Appeals found evidentiary support for the trial court's conclusion, which it described as a finding "that it was an implied condition of the

---

[1] The trial court said:

"I think it was in the contemplation on *[sic]* the defendant that if the corporation was going to earn the money the defendant—the plaintiff was going to make it earn the money and the plaintiff was going to make it earn the money *[sic]* and the plaintiff didn't."

agreement that the sale would go through only if the corporation earned sufficient money to make it possible".

## III

Mr. Schafer testified that he became convinced of the impossibility of consummating the redemption because of a March 31, 1972 financial statement showing a net operating loss for the previous nine months. However, Joseph M. Ashton, a former Dart employee who had served in many capacities including vice president, testified without contradiction that Dart's heating and air conditioning business is cyclical and is characterized by slow periods from late winter to early spring, or from December through about March or April. Business typically increased as soon as warm weather appeared in either April, May or June. Thus, it is not surprising that a statement as of April, 1972, would show the corporation to be at a low point. Mr. Ashton also testified that the year that plaintiff was running the business the profit and loss situation was no different than in any other year.

Moreover, there is no evidence that the agreement contemplated redemption of all 1,069 shares at one time. Rather, the opposite is indicated. The corporation's June 30, 1971 financial statement showed retained earnings of $13,040. Manifestly, it was not intended by the parties that an obligation of over $120,000 be paid out of that amount. The redemption agreement itself did not contemplate redemption of all the shares at once. It provided for payments of $1,670 plus interest each month and for release and delivery of the stock at the rate of $114 per share, that is, as it was paid for.

Dart's accountant, William J. Scott, testified

that the corporation's assets were undervalued and that at any time, after a proper appraisal and reevaluation, there would have been sufficient surplus to permit a redemption without impairment of capital. The accountant encouraged Mr. Schafer to comply with the redemption agreement.

There is no evidence that plaintiff was in default in any way in performance of his obligations under the three agreements. It also appears, with equal force, that if James Schafer had done what he promised to do, namely to cause Dart to "do all things necessary, desirable, or convenient, to facilitate the transition contemplated by [the redemption] agreement", redemption could have gone forward without an impairment of capital. Our scrutiny of the record reveals no basis for implying an agreement that plaintiff would cause the corporation to earn any particular amount; he entered into no such undertaking with Dart or the Schafers.

Plaintiff may be entitled to some remedy, either rescission, money damages, or specific performance because he was not in default and on the record before us there is no basis for implying an agreement on plaintiff's part to cause the corporation to earn any amount. Since the complaint was dismissed on completion of plaintiff's proofs and defendant's case has not been presented, we reverse the decision of the Court of Appeals and remand the case to the trial court pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, for the taking of further evidence and decision. Defendant's motion to dismiss becomes moot thereby and is denied.

KAVANAGH, C.J., and WILLIAMS, LEVIN, COLEMAN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.